Steven G. Lisa (Illinois Bar No. 6187348)
Jon E. Kappes (Ariz. State Bar # 024714)
LAW OFFICES OF STEVEN G. LISA, LTD.
55 West Monroe Street, Suite 3200
Chicago, IL 60603
stevelisa@patentit.com
jonkappes@patentit.com
Tel & Fax: (312) 752-4357

Victoria Curtin (Ariz. State Bar #010897)
VICTORIA GRUVER CURTIN, P.L.C.
14555 N. Scottsdale Rd., Ste. 160
Scottsdale, Arizona  85254
victoria@vcurtin.com
Tel.:  (480) 998-3547
Fax:  (480) 596-7956
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Helferich Patent Licensing, LLC, an Illinois limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | No. |
| vs. | ) ) | **COMPLAINT FOR** |
| NBA Properties, Inc., a New York Corporation; and National Basketball Association, Inc, a New York Corporation, | ) ) ) ) | **PATENT INFRINGEMENT** (Jury Trial Demanded) |
| Defendants. | ) ) ) | |

Plaintiff Helferich Patent Licensing, LLC ("HPL"), by and through its undersigned

counsel, complains against Defendants NBA Properties, Inc. and National Basketball

Association, Inc. (jointly, "NBA") as follows:

## NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the United States Patent Act, 35 U.S.C. §§ 101-376, including 35 U.S.C. § 271.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) in that this is a civil action arising out of the patent laws of the United States of America.

## JURISDICTION AND VENUE

2.      This Court has personal jurisdiction over Defendants because Defendants conduct substantial and continuous business in the State of Arizona and in this District, and purposefully direct their infringing activities to residents of this State and District by causing infringing messages to be sent to residents of this State and District, as described more fully in the paragraphs hereafter.

3.      Venue is appropriate pursuant to 28 U.S.C. § 1391(c) and 1400(b) because, among other reasons, Defendants are subject to personal jurisdiction in this District, and have caused infringing messages to be sent to residents of this State and District.

## PLAINTIFF

4.      HPL is an Illinois limited liability company with a principal place of business at 70 W. Madison St., Three First National Plaza, Suite 1400, Chicago, IL 60602.  HPL is the exclusive licensee of twenty-five (25) U.S. patents, eleven (11) pending U.S. applications, and over a dozen related foreign patents and patent applications all relating to mobile wireless communication devices and the provision of

media and content to such devices (collectively the "HPL Portfolio").  The HPL Portfolio includes the patents and applications listed in Exhibit A.

5.     On November 16, 2010, the United States Patent and Trademark Office ("Patent Office") issued Patent No. 7,835,757 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'757 patent"). HPL is the exclusive licensee of all right, title, and interest in the '757 patent.

6.     The '757 patent describes methods and systems relating to wireless messaging to mobile devices.  More particularly, the patent includes claims that relate to, among other things, a content provider causing the transmission of notification messages to mobile devices that include identifiers selected by the content provider (such as a URL) that identify content available for download, including for example, identifiers that are received from an identification service such as a link shortening service.   Other claims relate to notifications that identify content that is dynamic (updated or changed prior to the content being sent to the mobile user in response to a request for such content) and notifications that indicate the time the identified content is available. Examples of such notifications include SMS messages that include an identifier of content (such as a URL) in the message, and where the identified content is updated and/or changed by the content provider between the time the notification is sent and the time the content is requested, and MMS notifications or SMS messages that include an identifier of content (such as a URL) as well as an indication of the time the content is to be available (such as text indicating a "24 hour sale").

7.     On March 3, 2009, the Patent Office issued Patent No. 7,499,716 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'716 patent").  HPL is the exclusive licensee of all right, title, and interest in the '716 patent.

8.     The '716 patent describes methods and systems that relate to wireless messaging to mobile devices.  More particularly, the patent includes claims that relate to, among other things, the a content provider causing transmission of notification messages to mobile devices that include identifiers selected by the content provider (such as a URL) that identify content available for download.  Other claims relate to notifications that indicate the time the identified content is to be available.   An example of such a notification is an MMS notification or SMS message that includes an identifier of content (such as a URL) as well as an indication of the time the content is to be available (such as text indicating a "24 hour sale") and where the identified content is either removed or changed after the expiration of the time period specified in the notification.  The '716 patent also includes claims relating to the transmission of notification messages to mobile devices from which content providers can receive commands to perform on the content.  Examples of such notifications include MMS notifications from which users can request – and content providers receive – various commands to perform on content, such as a "reply" command, "forward" command, or "delete" command.

9.     On October 9, 2007, the Patent Office issued Patent No. 7,280,838 entitled "Paging Transceivers and Methods for Selectively Retrieving Messages" (the "'838

patent").  HPL is the exclusive licensee of all right, title, and interest in the '838 patent.

10.     The '838 patent describes methods and systems relating to wireless messaging to mobile devices.  More particularly, the '838 patent includes claims that relate to, among other things, a content provider causing the transmission of notification messages to mobile devices that include identifiers selected by the content provider (such as a URL) that identify content available for download.  Examples of such notifications include SMS messages or MMS notifications that include an identifier of content (such as a URL) in the message.

11.     On July 14, 2010, HPL filed suit against the New York Times Company asserting infringement of the '757, '716, and '838 patents asserted herein. Approximately six months later (in late February 2011), the New York Times Company filed three *ex parte* reexaminations in the Patent Office, one for each of the '757, '716, and '838 patents.  Shortly thereafter, and after consideration of all of the art and arguments presented in the *ex parte* reexaminations as well as three later-filed *inter partes* reexamination requests (discussed below), the Patent Office **confirmed as patentable** a total of 203 claims as a result of the *ex parte* reexaminations of the '716 and '757 patents.

(a) With respect to the '716 patent, on December 13, 2011, the Patent Office issued a "Reexamination Certificate" **concluding the reexamination** and **confirming as patentable** <u>16 original claims</u>, including claims 2, 16, 19, 20, 22, 23, 31, 34, 35, 38, 39, 43, 48, 49, 52, and 58; <u>53 claims with minor clarifying</u>

5

amendments, including claims 1, 3-15, 17, 18, 21, 24-30, 32, 33, 36, 37, 40-42, 44-47, 50, 51, 53-57, and 59-69; and 65 new claims, including claims 70-134.

(b)  With respect to the '757 patent, on December 9, 2011, the Patent Office issued a "Notice of Intent to Issue Reexamination Certificate" and ***confirmed as patentable*** 6 original claims, including claims 1, 6, 11, 18, 19, and 20; 14 claims with minor clarifying amendments (as agreed by the Examiner), including claims 2-5, 7-10, and 12-17; and 49 new claims, including claims 21-69.

(c)  With respect to the '838 patent, the Patent Office has issued a Non-Final Office Action to which HPL recently responded.  HPL likewise expects additional claims to be confirmed in the '838 reexamination.

12.   On September 6, 2011, ***after*** the Patent Office confirmed as patentable numerous infringed claims of HPL's patents and applications over the New York Times Company's *ex parte* reexamination requests, the New York Times Company joined with several other companies and filed a second round of reexamination requests—this time the New York Times Company along with several other companies filed *inter partes* reexamination requests for each of the '757, '716, and '838 patents.

(a)  On October 28, 2011, the Patent Office issued a non-appealable order denying the request for *inter partes* reexamination of the '838 patent in its entirety, stating repeatedly that "None of the above cited art [referring to the references newly asserted in the *inter partes* requests] provides any new technological teachings that were not present in the art cited in the previous reexamination."

6

(b)  On November 4, 2011, the Patent Office issued non-appealable orders fully denying the requests for *inter partes* reexaminations of the '757 and '716 patents for similar reasons.

Thus, in less than nine months, the Patent Office disposed of 5 of 6 reexamination requests (including denying outright all three *inter partes* reexaminations) filed by the New York Times Company and its defense group against HPL's patents, and HPL expects favorable results on the sixth request shortly.

13.    Additionally, during the same period, the Patent Office allowed and re-allowed three related pending patent applications (Application Nos. 11/598,202; 12/167,971; and 12/367,358) after express consideration of the New York Times Company's *ex parte* and *inter partes* reexamination requests, art, and arguments.  These allowed applications include at least 51 additional claims that HPL believes are infringed by content providers, such as the Defendants.

14.    To date, ninety-five (95) of the world's most sophisticated companies have acquired licenses to the HPL Portfolio.  Licensees include: ABInBev (Anheuser Busch), Adidas/Reebok, ADT Securities, Advanced Publications (Condé Nast), Ally Bank, Amazon, American Eagle Outfitters, American Greetings, Apple, Carnival Cruise Lines, Coinstar, Dairy Queen, Dell, DexOne, DIRECTV, Disney, eBay, Epitaph Records, Genesco, Glu Mobile, GSI Commerce (owned by eBay), Hair Cuttery,  Hewlett-Packard (and Palm), H&R Block, KGB, Macy's, McDonald's, MGM Resorts International, Microsoft, Motorola Mobility, the National Football League, the National Hockey

League, Newegg.com, PGA Tour, Qdoba Restaurants, Redbox, Research in Motion, Sears Holding Corporation, Shoptext, Starbucks, Steve Madden, Taco Bell,  Walgreens, Wal-Mart, Zuffa/UFC and numerous other companies including those whose identities HPL has agreed to keep confidential.

## HPL LICENSEES INCLUDE PROFESSIONAL SPORTS LEAGUES

15.     During the course of HPL's Licensing program, multiple professional sports leagues have addressed HPL's infringement allegations and accepted licenses with HPL including at least the National Football League, the National Hockey League, the PGA Tour, Zuffa (UFC), and other Major Sports Organizations whose names must remain confidential per the terms of their agreements with HPL (hereafter "Licensed Sports Leagues").  The NBA is not a Licensed Sports League.

16.     The license agreements between HPL and the Licensed Sports Leagues are confidential.  However, in general, the Licensed Sports Leagues specifically negotiated to extend their patent licenses from HPL to cover the activities of their respective sports teams.  Thus, for example, an authorized NHL hockey team would be covered under the HPL license with the National Hockey League to engage in otherwise infringing activities relating to the authorized activities of the team.

## DEFENDANTS ARE NOT HPL LICENSEES

17.     On or about March 28, 2011, HPL gave written notice to the Phoenix Suns, the Chicago Bulls and the Detroit Pistons of their infringement of the '757, '716, and

8

'838 patents.  The notice letters provided a detailed description of the claims, and in addition, provided detailed information including infringement charts demonstrating infringement of the claims.  On May 12, 2011, NBA Properties, Inc. wrote a letter to HPL as an "arm" of the National Basketball Association expressing its desire to handle licensing negotiations on behalf of all NBA teams.  Thereafter, HPL directed all communications relating to the NBA teams to NBA Properties, Inc.  NBA Properties has repeatedly refused to accept a license under HPL's patents on terms consistent with HPL's established license rates.

18.     Since being placed on notice, the teams, including the Phoenix Suns, and the NBA have continued to infringe HPL's patents while repeatedly refusing to accept licenses on HPL's well-established and reasonable licensing terms.  Further, the NBA has continued to refuse a license on terms consistent with HPL's established license rates even after HPL successfully licensed a large number of the other major sports leagues (including the NHL, NFL, Zuffa (the UFC), PGATour, and other Major Sports Organizations whose names are confidential), and the Patent Office confirmed a large number of claims as patentable and allowed numerous additional claims over express consideration of the prior art and arguments proffered by New York Times Company and others now cooperating with New York Times Company.  More specifically:

(a)     The NBA Refused a License After New York Times Filed its Ex Parte Reexaminations:  As discussed above, in late February 2011, New York Times filed its three (3) *ex parte* reexaminations on the '757, '716, '838 patents.  HPL's March 28, 2011

9

notice letters advised the Suns and other teams of the reexaminations and provided a detailed analysis explaining why HPL believed a large number of claims were likely to be confirmed.   The same letters also advised the Suns and other teams that the reexaminations did not cover all of the patents that the teams were accused of infringing. Notwithstanding, the NBA, on behalf of the teams, refused licenses on terms consistent with HPL's many licensees (including the many licensed sports leagues), and the NBA and its teams continued to infringe HPL's patents.

(b)      The NBA Continued to Refuse a License After the Patent Office Confirmed Claims:   As previously mentioned, in the third quarter of 2011 the Patent Office confirmed as patentable numerous infringed claims in two (2) of the pending *ex parte* reexamination proceedings over express consideration of New York Times Company's invalidity arguments, including many of the claims asserted to be infringed in this Complaint.  Notwithstanding the Patent Office confirming many of the claims asserted in this Complaint, the NBA, on behalf of the teams, refused a license on terms consistent with HPL's many licensees (including the many licensed sports leagues), and the NBA and its teams continued to infringe HPL's patents.

(c)      The NBA Continued to Refuse a License After *Inter Partes* Reexaminations were Filed on Less than All Asserted Claims:   On September 6, 2011, after the Patent Office confirmed and allowed numerous infringed claims of HPL's patents and applications over New York Times Company's invalidity arguments, several other companies joined New York Times Company in filing yet another round of

reexamination requests for the '757, '716, and '838 patents.  These new reexamination requests failed to seek reexamination of all claims asserted to be infringed by the Suns, including ***at least*** asserted claim 1 of the '757 patent, and claims 38 and 39 of the '716 patent.  Notwithstanding the *inter partes* reexamination requests failing to seek reexamination of all claims asserted herein, the NBA, on behalf of the teams,  refused a license on terms consistent with HPL's many licensees (including the many licensed sports leagues), and the NBA and its teams continued to infringe HPL's patents.

(d)     The NBA Continued to Refuse a License After the Patent Office Denied Outright All Three *Inter Partes* Reexaminations:  As previously stated, on October 28, 2011 and November 4, 2011, respectively, the Patent Office issued non-appealable orders fully denying all three of the New York Times defense group's requests for *inter partes* reexaminations.  Thereafter, on November 9, 2011, HPL promptly sent a letter to the NBA advising it of HPL's ongoing licensing, litigation, and patent prosecution efforts, and again offered a license to the NBA on HPL's well-established terms. Notwithstanding the outright denial of all three *inter partes* reexamination requests, the NBA, on behalf of the teams, refused a license on terms consistent with HPL's many licensees (including the many licensed sports leagues), and the NBA and its teams continued to infringe HPL's patents.

11

## **DEFENDANTS**

19.  Defendant National Basketball Association, Inc. is a New York Corporation having its principal office and place of business in New York, New York.  The National Basketball Association owns and operates a men's professional basketball league with approximately 30 teams throughout the United States, including the Phoenix Suns in this District.  Defendant NBA Properties, Inc. is a New York Corporation owned by the thirty member teams of the National Basketball Association that operates the marketing and licensing for the National Basketball Association.

20.  On November 22, 2011, HPL sued the Phoenix Suns in this district in *Helferich Patent Licensing, LLC v. Suns Legacy Partners, LLC (dba the Phoenix Suns)*, No. 2:11-cv-02304 DGC, for infringement of the patents asserted herein. The NBA (with the Phoenix Suns and other NBA teams) collectively carry out their infringing activities (described below) with the goal of furthering the National Basketball Association, driving fans to purchase tickets, attend or watch games, and purchase NBA and team merchandise.  Those sales and marketing activities of the NBA (and its teams including the Suns, in Arizona) result in significant benefit to the teams (including the Suns) and the NBA.  These activities arise out of the same transaction, occurrence, or series of transactions or occurrences: namely, the NBA promotes its products and services by creating, initiating, and causing a series of messages and identified content to be sent to fans, followers, and customers.  Such messages are used to increase sales and the number

12

fans of the NBA and its teams.   The NBA (and its teams, including the Suns) purposefully direct those infringing activities to residents of this State and this District.

21.    Within the last six (6) years, the NBA has initiated and caused numerous infringing messages to be sent in connection with at least the following product and service offerings:

a)    The NBA provides alerts to the mobile devices of its subscribers via SMS messaging as shown and described, for example at www.nba.com/mobile/alerts.html. The NBA enables its opt-in followers to select their teams (including specifically the Phoenix Suns) and players to follow and elect to receive alerts after each quarter and after each game ends.  The NBA's alerts enable subscribers to receive via SMS Dunks of the Day, Hoops News, and all of the tweets of NBA's Twitter feed.  In doing so, the NBA causes infringing messages to be sent to subscribers' mobile devices alerting the subscribers of programming and other offerings that often include an identifier of content (such as a URL) within the notification.   Moreover, such notifications often link to dynamic content (e.g., content that is changed between the time of the original notification and the time such content is requested), as well as indicate the time the identified content is to be available.

(b)    The NBA also causes infringing messages to be sent through various social media websites.  For example, the NBA causes thousands of infringing messages to be sent to its followers in conjunction with, among others, its @NBA Twitter feed and its Facebook Page at www.facebook.com/nba. The NBA's messages include identifiers

(e.g., URLs) that NBA received from an identification service such as a link shortening service (see, for example, "http://on.nba.com/wrHDec").   Still further, many of the messages indicate the time the content is available, and others contain identifiers to dynamic content where the content is changed between the time of the notification and the time the content is requested by the NBA's subscribers.

**COUNT I**
**(Infringement of United States Patent No. 7,835,757)**

22.     HPL incorporates by reference Paragraphs 1 through 21 of this Complaint and realleges them as though fully set forth herein.

23.     HPL is informed and believes, and thereon alleges, that the NBA has been and is currently infringing the '757 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of claims 1-13, and 15-20 of the '757 patent.   Additionally, upon the Patent Office's issuance of the forthcoming Reexamination Certificate regarding the '757 patent, Defendants likewise will be infringing one or more of claims 21-39, 41-62, and 64-69.   As mentioned previously, all of these claims have been confirmed patentable by the Patent Office over the New York Times Company's *ex parte* and *inter partes* reexamination requests.

24.     HPL is informed and believes, and thereon alleges, that the NBA infringes the '757 patent because it causes SMS notifications of the type described in Paragraph 6 to be sent to its subscribers' mobile devices.   HPL is informed and believes, and thereon

alleges that the NBA infringes the '757 patent in connection with at least the product offerings and services described in Paragraph 21, above.

25. In the alternative, HPL is informed and believes, and thereon alleges, that the NBA has actively induced and are currently inducing the infringement of the '757 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '757 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraph 24 have been, and continue to be, sent to its subscribers' mobile devices.

26. More specifically, the NBA has been on notice of its infringement of the '757 patent since at least May of 2011, and since that time numerous infringing SMS messages as described in Paragraph 24 have been, and continue to be, sent to the NBA's subscribers along with links to the NBA's content. HPL is informed and believes, and thereon alleges, that if it is not the NBA causing the infringing messages to be sent as alleged in Paragraph 24, then the NBA has actively induced or contributed to, and is currently actively inducing or contributing to, the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '757 Patent.

27. In addition, with the NBA being on notice of infringement of the '757 patent since at least May of 2011, HPL is informed and believes, and thereon alleges, that the NBA's infringement of the '757 patent has been and continues to be willful.

28.     As a direct and proximate result of the NBA's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT II
### (Infringement of United States Patent No. 7,499,716)

29.     HPL incorporates by reference Paragraphs 1 through 21 of this Complaint and realleges them as though fully set forth herein.

30.     HPL is informed and believes, and thereon alleges, that the NBA has been and is currently infringing the '716 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 15, 17, 18, 21, 22, 23, 24, 25, 26, 27, 30, 32, 33, 36, 37, 38, 39, 40, 41, 83, 85, 86, 89, 90, 91, 92, 93, 94, 97, 99, 100, 103, 104, 105, 106, and 107 of the '716 patent.  As mentioned previously, the Patent Office has issued a Reexamination Certificate confirming all of these claims in connection with the New York Times Company's *ex parte* and *inter partes* reexamination requests.

31.     HPL is informed and believes, and thereon alleges, that the NBA infringes the '716 patent because it causes SMS notifications of the type described in Paragraph 8 to be sent to its subscribers' mobile devices.  HPL is informed and believes, and thereon alleges, that the NBA infringes the '716 patent in connection with at least the product offerings and services described in Paragraph 21, above.

32.     In the alternative, HPL is informed and believes, and thereon alleges, that the NBA has actively induced and is currently inducing the infringement of the '716 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '716 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraph 31 have been, and continue to be, sent to its subscribers' mobile devices.

33.     More specifically, the NBA has been on notice of its infringement of the '716 patent since at least May of 2011, and since that time numerous infringing messages as described in Paragraph 31 have been, and continue to be, sent to the NBA's subscribers along with links to the NBA's content.  HPL is informed and believes, and thereon alleges, that if it is not the NBA causing the infringing messages to be sent as alleged in Paragraph 31, then the NBA has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '716 Patent.

34.     In addition, with the NBA being on notice of infringement of the '716 patent since at least May of 2011, HPL is informed and believes, and thereon alleges, that the NBA's infringement of the '716 patent has been and continues to be willful.

35.     As a direct and proximate result of the NBA's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law.

HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT III
### (Infringement of United States Patent No. 7,280,838)

36.     HPL incorporates by reference Paragraphs 1 through 21 of this Complaint and realleges them as though fully set forth herein.

37.     HPL is informed and believes, and thereon alleges, that the NBA has been and is currently infringing the '838 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 9, 10, 12, 13, 15, 16, 18, and 20 of the '838 patent (and likely others) within the United States without authority or license from HPL.  As mentioned previously, all claims of the '838 patent are presently under review by the Patent Office in connection with New York Time Company's *ex parte* reexamination request.

38.     HPL is informed and believes, and thereon alleges, that the NBA infringes the '838 patent because it causes SMS notifications of the type described in Paragraph 10 to be sent to its subscribers' mobile devices.  HPL is informed and believes, and thereon alleges, that the NBA infringes the '838 patent in connection with at least the product offerings and services described in Paragraph 21, above.

39.     In the alternative, HPL is informed and believes, and thereon alleges, that the NBA has actively induced and is currently inducing the infringement of the '838 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '838 patent in violation of 35 U.S.C. § 271(c)

because numerous SMS notifications of the type described in Paragraph 38 have been, and continue to be, sent to its subscribers' mobile devices.

40.     More specifically, the NBA has been on notice of infringement of the '838 patent since at least May of 2011, and since that time numerous infringing messages as described in Paragraph 38 have been, and continue to be, sent to the NBA's subscribers along with links to the NBA's content.   HPL is informed and believes, and thereon alleges, that if it is not the NBA causing the infringing messages to be sent as alleged in Paragraph 38, then the NBA has actively induced or contributed to, and are currently actively inducing or contributing to the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '838 Patent.

41.     In addition, with the NBA being on notice of infringement of the '838 patent since at least May of 2011, HPL is informed and believes, and thereon alleges that the NBA's infringement of the '838 patent has been and continues to be willful.

42.     As a direct and proximate result of the NBA's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

WHEREFORE, for the foregoing reasons, Helferich Patent Licensing, LLC, prays for:

(a)      Judgment that Defendants, and each of them, have infringed, actively induced others to infringe, or contributed to the infringement by others of one or more of the claims of the '757 patent, '716 patent, '838 patent;

(b)      A permanent injunction to be issued enjoining and restraining Defendants and their respective officers, directors, agents, servants, employees, attorneys, licensees, successors, assigns, and those in active concert and participation with them, and each of them, from making, using, selling, offering for sale, or importing any products, systems or methods which fall within the scope of one or more of the claims of the '757 patent, '716 patent, and '838 patent and from inducing or contributing to infringement of any such claims by others;

(c)      An award of damages against Defendants adequate to compensate HPL for past infringement of one or more of the claims of the '757 patent, '716 patent, and '838 patent, together with interest and costs as fixed by the Court, such damages to be trebled because of the willful and deliberate character of the infringement;

(d)      Judgment that this case is "exceptional" under 35 U.S.C. § 285, and HPL is entitled to an award of its reasonable attorneys' fees in the prosecution of this action; and

(e)      Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby makes a demand for a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure as to all issues in this lawsuit.

RESPECTFULLY SUBMITTED this 17th day of January, 2012.

                                        VICTORIA GRUVER CURTIN, P.L.C.

                                        By: */s/ Victoria Curtin*
                                            Victoria Curtin
                                            14555 North Scottsdale Rd., Ste. 160
                                            Scottsdale, Arizona 85254
                                            Tel.:  (480) 948-3295
                                            Fax:  (480) 948-3387
                                            Attorney for Plaintiff

## Exhibit A

1. U.S. Patent No. 7,957,695, entitled "Method for Integrating Audio And Visual Messaging;" issued June 7, 2011.

2. U.S. Patent No. 7,843,314, entitled "Paging Transceivers and Methods for Selectively Retrieving Messages;" issued November 30, 2010;

3. U.S. Patent No. 7,835,757 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device,"  issued November 16, 2010;

4. U.S. Patent No. 7,627,305, titled "Systems and Methods for Adding Information to a Directory Stored in a Mobile Device" issued December 1, 2009.

5. U.S. Patent No. 7,499,716, titled "System and Method for Delivering Information to a Transmitting and Receiving Device" issued March 3, 2009.

6. U.S. Patent No. 7,403,787, titled "Paging Transceivers and Methods for Selectively Retrieving Messages" issued July 22, 2008.

7. U.S. Patent No. 7,376,432, titled "Paging Transceivers and Methods for Selectively Retrieving Messages" issued May 20, 2008.

8. U.S. Patent No. 7,280,838, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued October 9, 2007.

9. U.S. Patent No. 7,277,716, titled "Systems and Methods for Delivering Information to a Communication Device," issued October 2, 2007.

10. U.S. Patent No. 7,242,951, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued July 10, 2007.

11. U.S. Patent No. 7,155,241, titled "Systems and Methods for Enabling a User of a Communication Device to Manage Remote Information," issued December 26, 2006.

12. U.S. Patent No. 7,146,157, titled "Systems and Methods for Downloading Audio Information to a Mobile Device," issued December 5, 2006.

13. U.S. Patent No. 7,039,428, titled "System and Method for Delivering Information to a Transmitting and Receiving Device," issued May 2, 2006.

14. U.S. Patent No. 7,003,304, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued February 21, 2006.

15. U.S. Patent No. 6,983,138, titled "User Interface for Message Access," issued January 3, 2006.

16. U.S. Patent No. 6,826,407, titled "System and Method for Integrating Audio and Visual Messaging," issued November 30, 2004.

17. U.S. Patent No. 6,696,921, titled "Transmitting and Receiving Devices and Methods for Transmitting Data to and Receiving Data from a Communications System," issued February 24, 2004.

18. U.S. Patent No. 6,636,733, titled "Wireless Messaging Method," issued October 21, 2003.

19. U.S. Patent No. 6,462,646, titled "Transmitting and Receiving Devices and Methods for Transmitting Data to and Receiving Data from a Communication System," issued October 8, 2002.

20. U.S. Patent No. 6,459,360, titled "Networks, Communication Systems, Transmitting and Receiving Devices and Methods for Transmitting, Receiving, and Erasing Stored Information," issued October 1, 2002.

21. U.S. Patent No. 6,259,892, titled "Pager Transceivers and Methods for Performing Action on Information at Desired Times," issued July 10, 2001.

22. U.S. Patent No. 6,253,061, titled "Systems and Methods for Delivering Information to a Transmitting and Receiving Device," issued June 26, 2001.

23. U.S. Patent No. 6,233,430, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued May 15, 2001.

24. U.S. Patent No. 6,097,941, titled "User Interface for Voice Message Access," issued August 1, 2000.

25. U.S. Patent No. 6,087,956, titled "Paging Transceivers and Methods for Selectively Erasing Information," issued July 11, 2000.

26. U.S. Patent Application No. 13/210, 223, titled "Wireless Messaging Systems and Methods."

27. U.S. Patent Application No. 13/109,437, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

28. U.S. Patent Application No. 13/109,389, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

29. U.S. Patent Application No. 12/973,722, titled "Wireless Messaging Systems and Methods."

30. U.S. Patent Application No. 12/580,189, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

31. U.S. Patent Application No. 12/367,358, titled "Content provision to subscribers via wireless transmission."

32. U.S. Patent Application No. 12/267,436, titled "Wireless Messaging System."

33. U.S. Patent Application No. 12/167,971, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

34. U.S. Patent Application No. 11/598,832, titled "Systems and Methods for Downloading Information to a Mobile Device."

35. U.S. Patent Application No. 11/598,202, titled "Wireless Messaging System."

36. U.S. Patent Application No. 10/958,731, titled "System and Method for Integrating Audio and Visual Messaging."